

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN E. TAYLOR, JR., | ) | CIVIL ACTION UNDER §1983 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 16-CV-03464 |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| Saleh Obasi, M.D., Arthur Funk, M.D., | ) | |
| Louis Shicker, M.D., Randy Pfister, Tarry | ) | Judge John Robert Blakey |
| Williams, Nicholas Lamb, Diana L. | ) | |
| Malloy, Elaine Gedman, Darius Holmes, | ) | |
| Kevin Halloran, and Michael Warso, M.D. | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

## CONSOLIDATED SECOND AMENDED COMPLAINT

Plaintiff John E. Taylor ("Taylor" or "Plaintiff"), by and through undersigned counsel, and for his Consolidated Second Amended Complaint against defendants Wexford Health Sources, Inc., ("Wexford"), Saleh Obasi, M.D., Arthur Funk, M.D., Louis Shicker, M.D., Randy Pfister, Tarry Williams, Nicholas Lamb, Diana L. Malloy, Elaine Gedman, Darius Holmes, Kevin Halloran, and Michael Warso, M.D. ("Warso") (collectively "Defendants") states as follows:

### STATEMENT OF THE CASE

1. This is a civil action seeking damages and injunctive relief against Defendants for committing acts, under color of law, with the intent and purpose of violating Plaintiffs rights under the Eighth and Fourteenth Amendments to the U.S. Constitution.

2. On March 18, 2016, Mr. Taylor filed a *pro se* Complaint pursuant to 42 U.S.C. §1983 [Dkt.1]. On May 25, 2016 the Court appointed Fred A. Smith to represent Mr. Taylor in accordance with the District Court rules.

3. On July 22, 2016, Plaintiff was granted additional time, or until September 23, 2016 to file his amended complaint. [Dkt. 24].

4. On September 23, 2016, Plaintiff filed an Amended Complaint [Dkt. 28].

5. Following further investigation and communications with Mr. Taylor, Plaintiff seeks to file a Second Amended Complaint in this action.

## JURISDISCTION AND VENUE

6. Subject matter jurisdiction is proper in this Court by virtue of 42 U.S.C. §1983, *et seq.*; 28 U.S.C. §§1331 and 1343(a); and the Constitution of the United States, Articles Eight and Fourteen.

7. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to the claims asserted herein occurred within this judicial district.

8. As required by the Prison Litigation Reform Act, Plaintiff exhausted his administrative remedies before filing this action.

## PARTIES

9. Plaintiff John E. Taylor is in the custody of the Illinois Department of Corrections ("IDOC"). He is currently incarcerated at Stateville Correctional Center in Joliet, Illinois ("Stateville").

10. Upon information and belief, Defendant Wexford is a foreign corporation incorporated in the State of Florida, with its principal place of business in Pittsburgh, Pennsylvania. Wexford is authorized to conduct business within the State of Illinois.

11. Upon information and belief, and at all relevant times herein, Wexford was contracted to provide medical services to inmates at IDOC facilities within the State of Illinois. At all relevant times, Wexford acted under color of law when performing its contractual duties to provide medical care to inmates at IDOC facilities within the State of Illinois.

12. Upon information and belief, Defendant, Dr. Saleh Obasi ("Dr. Obasi"), at all relevant times, is and was a licensed medical doctor, and is or was an agent, servant, employee of or otherwise rendered medical services on behalf of Wexford. Dr. Obasi, while employed by Wexford, was and is the medical director at Stateville. Upon information and belief, Dr. Obasi was responsible for the determination and delivery of appropriate medical care to inmates, and more specifically to Plaintiff.

13. Dr. Obasi is liable in his individual capacity for any damages suffered by Plaintiff.

14. Dr. Obasi is liable in his official capacity for any injunctive relief sought by Plaintiff.

15. Upon information and belief, Defendant Dr. Arthur Funk ("Dr. Funk") is a licensed medical doctor and is or was formerly employed by Wexford. Dr. Funk, while employed by Wexford, was responsible for and/or supervised and directed the determination and delivery of appropriate medical care to inmates in a certain region that included

Stateville and more specifically included Plaintiff. Plaintiff wrote letters to and had conversations with Dr. Funk complaining about his medical condition.

16. Dr. Funk is liable in his individual capacity for any damages suffered by Plaintiff.

17. Dr. Funk is liable in his official capacity for any injunctive relief sought by Plaintiff.

18. Upon information and belief, Defendant Dr. Louis Shicker ("Dr. Shicker") is a licensed medical doctor, and is or was an agent, servant, employee of or otherwise rendered medical services on behalf of IDOC. Upon information and belief, Dr. Shicker, while employed by IDOC, was responsible for the determination and delivery of appropriate medical care to inmates, and more specifically Plaintiff.

19. Dr. Shicker is liable in his individual capacity for any damages suffered by Plaintiff.

20. Dr. Shicker is liable in his official capacity for any injunctive relief sought by Plaintiff.

21. Upon information and belief, Defendant Randy Pfister ("Mr. Pfister" or "Warden Pfister") is the warden at Stateville Correctional Center, where Plaintiff is currently incarcerated. He is sued in his official capacity because Plaintiff seeks injunctive relief and Mr. Pfister would be responsible for ensuring that the injunctive relief is carried out.

22. Mr. Pfister is sued in his individual capacity for any damages suffered by Plaintiff.

23. Upon information and belief, Defendant Tarry Williams ("Mr. Williams" or "Warden Williams") was the warden at Stateville Correctional Center when Plaintiff identified various grievances regarding his worsening medical condition. At all relevant times, Mr.

Williams was responsible for and had decision-making authority at Stateville. Plaintiff wrote letters to and had conversations with various Stateville wardens and other officials complaining about his medical condition.

24. Mr. Williams is sued in his individual capacity for any damages suffered by Plaintiff.

25. Mr. Williams is sued in his official capacity for any injunctive relief sought by Plaintiff.

26. Upon information and belief, Defendant Nicholas Lamb ("Mr. Lamb") was employed by the Illinois Department of Corrections as an assistant warden at Stateville during the time period Plaintiff alleges he had insufficient medical care. Mr. Lamb is currently employed at the Lawrenceville Correctional Center in Sumner, Illinois. Mr. Lamb, while employed by the Illinois Department of Corrections, had a duty to ensure the adequacy of the care Plaintiff received.

27. Mr. Lamb is sued in his individual capacity for any damages suffered by Plaintiff.

28. Mr. Lamb is sued in his official capacity for any injunctive relief sought by Plaintiff.

29. Upon information and belief, Defendants Diana L. Malloy, Elaine Gedman and Darius Holmes are owners, part owners, officers, employees and/or agents of Wexford. Plaintiff notified each of them in writing of his various medical problems.

30. Kevin Halloran is a founder and Chairman of Wexford and knows or should have known of Plaintiff's pain and suffering due to lack of medical treatment based on the notice to Malloy, Gedman and Holmes, and otherwise.

31. Defendants Malloy, Gedman, Holmes and Halloran ("the Wexford Individuals") turned a blind eye to, and established and/or condoned the policies, procedures, and custom and practice of Wexford medical providers at IDOC in delaying and/or denying proper medical care to inmates, and in particular to plaintiff in violation of his rights under the Eight and Fourteenth Amendments to the US Constitution.

32. The Wexford Individuals are sued in their individual capacity for any damages suffered by Plaintiff.

33. Upon information and belief, Defendant Michael Warso is a licensed medical doctor. Dr. Warso worked with Wexford to treat inmate patients, including Plaintiff, during his career. Dr. Warso saw and/or treated Plaintiff at various times and was responsible for the determination and delivery of appropriate medical care to Plaintiff. Dr. Warso is liable in his individual capacity for damages suffered by Plaintiff.

## FACTS COMMON TO ALL COUNTS

34. Mr. Taylor realleges and incorporates paragraphs 1 through 33 as though fully set forth herein.

35. Plaintiff has been in IDOC custody since 2007.

36. At all relevant times, Wexford has been contractually obligated to provide medical services at IDOC facilities.

37. Under its contract, Wexford is and was obligated to provide medical care to inmates at IDOC facilities, including Stateville, and to ensure that all care is and was adequately provided.

38. Wexford's contractual obligations include the responsibility to appoint an on-site Medical Director at each facility covered by the contract, to oversee all aspects of the health care program.

39. Wexford has promulgated written policies, procedures and has a custom and practice in place to guide the provision of health care to IDOC inmates.

40. Wexford's written policies, procedures, and custom and practice required the on-site medical director to oversee the entire health services program at the relevant prisons, and specifically to ensure the timely and efficient response to all inmates' health needs.

41. In addition to written policies, Wexford has an established custom and practice governing the provision of care to inmates, and that custom and practice is so prevalent as to have the force of law.

42. On or about April 23, 2014, Plaintiff had major reconstructive surgery performed by Dr. Warso to remove a large mass in his lower stomach. Post-surgery, Dr. Warso informed Plaintiff that the pathology had revealed an infection in the iliac crest bone due to previous radiation which indicated a possible return of his cancer.

43. On May 19, 2014, Plaintiff returned for a follow up appointment with Dr. Warso. Plaintiff inquired about substantial swelling in his groin and abdomen, four weeks post-surgery, which Dr. Warso deemed to be normal.

44. On multiple occasions beginning in 2014, Plaintiff complained to prison officials, including various Defendants, about the increase in size of his abdomen and the pain it caused him. Prison officials, including various Defendants, were thus aware of Plaintiff's worsening condition and his increasing pain.

45. From July to November 2014, Plaintiff wrote several grievances to alert Drs. Obasi, Funk, Shicker and Mr. Williams that he had not received a scheduled follow up regarding the complications from his surgery, which he consistently was told were "normal."

46. On November 25, 2014, following months of complaints to the Defendants, Plaintiff was informed by Dr. Warso that he had developed a ventral acquired hernia as a result of his surgeries. Dr. Warso requested that Plaintiff be seen by a colorectal surgeon.

47. The standard treatment for, and only long-term solution to, most hernias is a surgical repair. Between 2014 and 2016, Plaintiff's hernia expanded, became more painful, and, upon information and belief, is now much more difficult to repair and is incarcerated or non-reducible.

48. On February 9, 2015, Plaintiff met with a colorectal surgeon who recommended a colonoscopy and CT scan and issued a referral recommending Plaintiff should be sent to a General Surgeon for hernia repair.

49. On July 22, 2015, Plaintiff met with the General Surgeon and was informed that his hernia was large, measuring 11.2 cm and needed surgical correction.

50. Despite the clear need for the surgery, the presence of severe pain, and the referral for urgent care, Dr. Obasi, the Stateville Medical Director, did not order any treatment or send Plaintiff for the surgery, to repair his hernia.

51. When Dr. Obasi examined Plaintiff for another ailment, Plaintiff told Dr. Obasi that he was not being treated for his hernia. Dr. Obasi merely glanced at Plaintiff's hernia and, without any further examination, told Plaintiff that his hernia was fine and did not need any additional attention.

52. Defendant Dr. Obasi's conduct is a substantial departure from accepted professional standards, is in direct contradiction to the medical specialist who recommended Plaintiff have surgery, and shows a deliberate indifference to Plaintiff's medical condition.

53. On information and belief, Defendants Drs. Funk, and Obasi denied and/or delayed the needed hernia repair surgery as part of their implementation of the Wexford policies, customs and practices. The Wexford Individuals turned a blind eye and condoned such policies, and customs and practices. Wexford's policies, customs and practices have led to delays or denials of medical treatment to IDOC inmates including Plaintiff and those policies, customs and practices were one of the proximate causes of the violation of Plaintiffs Eighth Amendment rights.

54. Defendants Mr. Williams, Mr. Pfister and Mr. Lamb had and have the authority to facilitate Plaintiff receiving surgical treatment to repair his worsening hernia but have failed to do so out of deliberate indifference.

55. Ultimately, Plaintiff obtained recommendations that he should have surgery to repair the hernia but the Defendants have currently delayed the surgical repair. This is a direct result of deliberate indifference to Plaintiff's condition and a result of Wexford's policy, custom and practice of understaffing, delaying medical treatment, and/or delaying the scheduling of medical appointments and needed surgeries. All of these delays have exacerbated Plaintiff's condition and unnecessarily prolonged and exacerbated his pain.

56. Wexford and the Wexford Individuals knew at the time and currently know that its policies, procedures and its custom and practice cause unnecessary pain and substantially delay medical treatment, but continue to act with deliberate indifference to the

medical needs of inmates. Further, Wexford's policies, procedures and its custom and practice concerning hernias do not take into account the pain the inmate reports suffering.

57. Wexford's policies, procedures and its custom and practice concerning hernias result in delays and denials of needed surgery and caused Plaintiff harm because the individual physicians, who were deliberately indifferent to Plaintiff's serious medical needs, were following Wexford's policies, procedures, customs and practices.

58. The deliberate indifference of these Defendants caused Plaintiff grave harm. Plaintiff unnecessarily suffered severe pain because of these Defendants' failure to take reasonable measures to deal promptly with Plaintiff's hernia. Because of his pain, Plaintiff can longer engage in the exercises that physical therapy has recommended for him. Plaintiff's hernia was not properly treated and has grown immensely to the point that it is reaching a life-threatening size and threatening Plaintiff with serious injury, including death.

## COUNT I
### (42 U.S.C. § 1983 Claim for Deliberate Indifference to Medical Care – Against Defendants and the Wexford Individuals) (Hernia)

59. Mr. Taylor realleges and incorporates paragraphs 1 through 58 as though fully set forth herein.

60. Article 42 U.S.C. §1983 provides, in pertinent part, as follows:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …"

61. At all relevant times, Mr. Taylor suffered and continues to suffer from serious medical conditions.

62. At all relevant times, the Defendants had notice, knew or should have known of Plaintiff's serious medical conditions.

63. At all relevant times, the Defendants acted within the scope of their employment and under the color of the Federal laws as well as under the color of the laws, regulations and customs of the state of Illinois. Each of these Defendants actions constitutes "state action" as defined under federal law.

64. At all relevant times, the Defendants had an obligation to ensure that Plaintiff received appropriate medical care so that he would not come to harm or suffer unnecessary physical and mental injury and pain during his confinement.

65. The Defendants, individually, jointly and in conspiracy with each other and certain unnamed medical providers and prison administrators, exhibited deliberate indifference to Mr. Taylor's serious medical conditions by denying him sufficient access to IDOC's medical facilities, by failing to treat Mr. Taylor's hernia, and by failing to provide Mr. Taylor with the recommended hernia surgery.

66. As a direct consequence of the conduct of the Defendants, Mr. Taylor's hernia worsened considerably during the time of his incarceration. He has suffered and continues to suffer extreme physical pain and other bodily injuries as a result of this misconduct.

WHEREFORE, Plaintiff prays that this Court find and hold that Plaintiff's Constitutional rights under the Eighth and Fourteenth amendment have been violated by the Defendants. As a result of the delay in treatment, during which Plaintiff has suffered long periods of pain and anguish, Plaintiff prays that this Court order that Plaintiff be awarded compensatory damages, attorney fees, filing fees, copying costs, and other fees and costs. Further, Defendants acted maliciously, willfully, wantonly and/or with reckless disregard for Mr. Taylor's constitutional

rights, and accordingly Plaintiff prays this Court award punitive damages and/or such other relief as this Court deems equitable and just. Finally, Plaintiff prays that this Court order injunctive relief mandating and requiring Defendants to provide adequate treatment for Plaintiff's medical needs, including surgical repair of his hernia.

**COUNT II**
**(42 U.S.C. § 1983 Claim for Deliberate Indifference to Medical Care –**
**Against Defendants) (Untreated Masses in Right Arm)**

67. Mr. Taylor realleges and incorporates paragraphs 1 through 66 as though fully set forth herein.

68. On or about April 2013, Plaintiff notified Dr. Obasi about two growths on his right arm between his shoulder and elbow. Dr. Obasi told him to inform the oncologist about the growths when he next saw him.

69. On or about June 2013, Plaintiff notified Dr. Warso and Dr. Ho of the growths in his arm and the pain it was causing. Nothing was done about these masses.

70. On July 9, 2014, September 28, 2014 and November 2, 2014, Plaintiff wrote grievances and complained about the growths as well as the pain they were causing. Mr. Taylor finally saw Dr. Warso on November 24, 2014 to have the growths in his arm examined. MRIs were recommended to evaluate these masses.

71. Plaintiff's pain continued. On or about February 2, 2015, he filed another grievance, noting none of the recommended MRIs had been conducted. On or about, February 24, 2015, Plaintiff filed a follow up grievance as to the lack of any MRIs, repeating his concern that the growths may be cancerous.

72. On or about February 25, 2015, Plaintiff met with Dr. Obasi. Dr. Obasi examined the growths and referred Plaintiff back again to Dr. Warso for further care. No MRI exam was

conducted and Dr. Warso did not see Plaintiff. Mr. Taylor filed grievances on April 7, 2015, June 5, 2015, and July 25, 2015 to have the growths evaluated and his pain treated.

73. Dr. Obasi, despite having the authority to do so, took no corrective action to address Plaintiff's pain, or have his growths evaluated. His conduct shows a conscious and deliberate indifference to Plaintiff's medical needs and was a substantial departure from accepted professional judgment, practice, and standards.

74. Plaintiff also wrote letters to Wexford, including the Wexford Individuals, making it/them aware that Plaintiff suffered from a serious medical condition involving the growths and pain in his arm and that his medical needs were not being adequately met. Wexford, as well as the Wexford Individuals, has and had the authority and ability to affect and carry out the medical care Plaintiff needs, but refused to do so, because of conscious and deliberate indifference.

75. Wexford has an actual policy, procedure and custom and practice of delaying medical treatment involving pain, and that policy, procedure and custom and practice caused Plaintiff unnecessary pain. The Wexford Individuals turned a blind eye and condoned such policies, procedures and custom and practice. Wexford's policies, procedure and custom and practice caused Plaintiff's harm because its physician employees, who were deliberately indifferent to Plaintiff's serious medical needs, were following Wexford's policies, procedures and its custom and practice.

76. Plaintiff has complained repeatedly to prison officials, including the Defendants, that the pain medications he was given to ease his pain were ineffective.

77. Article 42 U.S.C. §1983 provides, in pertinent part, as follows:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to

be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …"

78. At all relevant times, Mr. Taylor suffered and continues to suffer from serious medical conditions.

79. At all relevant times, the Defendants had notice, knew or should have known of Plaintiff's serious medical conditions, which included the two growths on his right arm between his shoulder and elbow and the subsequent pain they caused.

80. At all relevant times, the Defendants acted within the scope of their employment and under the color of the Federal laws as well as under the color of the laws, regulations and customs of the state of Illinois. Each of the Defendants actions constitutes "state action" as defined under federal law.

81. At all relevant times, the Defendants had an obligation to ensure that Plaintiff received appropriate medical care so that he would not come to harm or suffer unnecessary physical pain, anguish and mental injury during his confinement.

82. The Defendants, individually, jointly and in conspiracy with each other and certain unnamed medical providers and prison administrators, exhibited deliberate indifference to Mr. Taylor's serious medical conditions by denying him sufficient access to Illinois Department of Corrections' medical facilities, failing to evaluate and treat Mr. Taylor's two growths on his right arm between his shoulder and elbow and the subsequent pain caused by the growths.

83. As a direct consequence of the conduct of the Defendants, Mr. Taylor's masses remain unevaluated. Moreover, he has suffered and continues to suffer extreme physical pain.

WHEREFORE, Plaintiff prays that this Court find and hold that Plaintiff's Constitutional rights under the Eighth and Fourteenth amendment have been violated by the Defendants. As a

result of the delay in treatment, during which Plaintiff has suffered long periods of pain and anguish, Plaintiff prays that this Court order that Plaintiff be awarded compensatory damages, attorney fees, filing fees, copying costs, and other fees and costs. Further, Defendants acted maliciously, willfully, wantonly and/or with reckless disregard for Mr. Taylor's constitutional rights, and accordingly Plaintiff prays this Court award punitive damages and/or such other relief as this Court deems equitable and just. Finally, Plaintiff prays that this Court order injunctive relief mandating and requiring Defendants to provide adequate treatment for Plaintiff's medical needs, including complete evaluation of the growths on his arm as well as proper treatment of those growths.

## COUNT III
### (42 U.S.C. § 1983 Claim for Deliberate Indifference to Medical Care – Against Defendants) (Denial of Access to the UIC Pain Clinic)

84. Mr. Taylor realleges and incorporates paragraphs 1 through 83 as though fully set forth herein.

85. Plaintiff has a long history of and suffers from chronic neck and back pain due to a car accident that happened in the 1980's.

86. On or about April 2013, and documented through at least February 2015, Plaintiff informed and made numerous complaints to Dr. Obasi about his back and neck pain. Dr. Obasi told the Plaintiff, "I am more concerned about the mass you have, because it could kill you, than the pain in your back and neck. I understand you have chronic neck and back pain, but once we deal with what might be cancer, I will send you to the pain clinic."

87. At some time in 2010, Plaintiff first saw a Pain Specialist at the University of Illinois Chicago ("UIC") Pain Clinic and was treated with an epidural injection in both the back and neck. Plaintiff received epidural injections about twice per year until 2012. Along with the

epidural injections, Plaintiff was given oral pain medications, which managed the pain. However since 2012, Plaintiff has not been receiving those injections or the oral medications and his pain intensity has substantially increased.

88. On or about September 28, 2014, November 2, 2014, June 5, 2015, July 25, 2015, and October 21, 2015, Plaintiff submitted grievances about being denied and delayed medical treatment by the Pain Specialist. Each time, Plaintiff stated clearly that he was suffering great pain and needed to be treated.

89. After several years of complaints about the neck and back pain from Plaintiff, Dr. Obasi referred Plaintiff to the Pain Clinic.

90. On or about February 10, 2015, Plaintiff met with the Physician at the Pain Clinic. An epidural injection was administered to Plaintiff's neck and the Pain Specialist recommended that Plaintiff return in two months for a follow up and possible additional injection for his neck.

91. Prior to receiving the epidural injection in the neck, Plaintiff was unable to hold his head up without being in pain and was confined to a wheel chair. Plaintiff is and was also unable to use crutches due to the painful masses in his right arm.

92. Due to the long periods without neck and back epidural injections, Plaintiff has suffered significant pain because of the conscious and deliberate indifference by the Defendants to Plaintiff's medical needs.

93. Wexford through its policies, procedures and its custom and practice, and in its official capacity as well as its regional director, Dr. Arthur Funk, have delayed and denied sending Plaintiff to the UIC Pain Clinic for much needed treatment for his pain in violation of Plaintiff's constitutional Eight Amendment right to receive adequate medical treatment. On information and belief, this was part of Wexford's cost cutting measures, whereby Wexford

deliberately restricted the number of inmates who could be sent to the UIC pain clinic. The Wexford Individuals turned a blind eye and condoned such policies, procedures and custom and practice. Wexford's conduct constitutes deliberate indifference and is based on its own policies, procedures and custom and practice imposed to delay needed care and treatment.

94. Further, Dr. Obasi is liable in his individual capacity based on his deliberate indifference and conscious delay of medical treatment for Plaintiff's back and neck pain. Plaintiff filed grievances and made complaints to Dr. Obasi about lack of care.

95. Dr. Arthur Funk, Regional Director of Wexford, is liable because of his indifference to Plaintiff's pain complaints despite being aware of Plaintiff's need to be seen by the Pain Clinic.

96. Warden Tarry Williams in his individual and professional capacity is liable for denying and delaying medical treatment for Plaintiff at the Pain Clinic at UIC Hospital. Mr. Williams was also made aware of Plaintiff's medical needs, and while he communicated to Plaintiff that there was effort being made to improve the situation, nothing was done. Mr. Williams denied all of Plaintiff's grievances, both regular and emergency, complaining about his neck and back pain and the need for medical attention from the pain specialist. Mr. Williams was and is aware of Wexford's custom and practice of deliberately denying and delaying adequate medical treatment of inmates at UIC Hospital clinics and of not referring prisoners for timely medical treatment.

97. Plaintiff exhausted his Administrative remedies about the denied and delayed medical treatment from the UIC pain clinic for his back and neck pain by filing both regular and emergency grievances.

98. Article 42 U.S.C. §1983 provides, in pertinent part, as follows:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …"

99. At all relevant times, Mr. Taylor suffered and continues to suffer from serious medical conditions.

100. At all relevant times, the Defendants had notice, knew or should have known of Plaintiff's serious medical conditions.

101. At all relevant times, the Defendants acted within the scope of their employment and under the color of the Federal laws under the color of the laws, regulations and customs of the state of Illinois. Each of the Defendants actions constitutes "state action" as defined under federal law.

102. At all relevant times, the Defendants had an obligation to ensure that Plaintiff received appropriate medical care so that he would not come to harm or suffer unnecessary physical and mental injury and pain during his confinement.

103. The Wexford Individuals and the Defendants, individually, jointly and in conspiracy with each other and certain unnamed medical providers and prison administrators, exhibited deliberate indifference to Mr. Taylor's serious medical conditions by denying him sufficient access to Illinois Department of Corrections' medical facilities, including the Pain Clinic at UIC Hospital, and failing to treat and/or manage Mr. Taylor's pain.

104. As a direct consequence of the conduct of the Defendants, Mr. Taylor's pain worsened considerably during the time of his incarceration. He has suffered and continues to suffer extreme physical pain.

WHEREFORE, Plaintiff prays that this Court find and hold that Plaintiff's Constitutional rights under the Eighth and Fourteenth Amendments have been violated by the Defendants. As a result of the delay in treatment, during which Plaintiff has suffered long periods of pain and anguish, Plaintiff prays that this Court order that Plaintiff be awarded compensatory damages, attorney fees, filing fees, copying costs, and other fees and costs. Further, Defendants acted maliciously, willfully, wantonly and/or with reckless disregard for Mr. Taylor's constitutional rights, and accordingly Plaintiff prays this Court award punitive damages and/or such other relief as this Court deems equitable and just. Finally, Plaintiff prays that this Court order injunctive relief mandating and requiring Defendants to provide adequate treatment for Plaintiff's medical needs, including treatment at the UIC Pain Clinic to adequately address Plaintiff's neck and back pain.

## JURY DEMAND

Plaintiff demands trial by jury on all Counts of the Amended Complaint.

Dated: November 16, 2016

Respectfully submitted,

/s/ Fred A. Smith

Fred A. Smith
SEDGWICK LLP
One North Wacker Drive
Suite 4200
Chicago, IL 60606
312.849.1990
fred.smith@sedgwicklaw.com