**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN E. TAYLOR, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 16-cv-3464 |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., et al., | ) | The Honorable Judge John R. Blakey |
| | ) | Jury Demanded |
| Defendants. | ) | |

**DEFENDANT DARIUS HOLMES MEMORANDUM**
**OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

NOW COMES Defendant, DARIUS HOLMES, by his attorneys, CONNOLLY KRAUSE, LLC, for his Memorandum of Law in Support of Summary Judgment per FRCP 56 and Local R. 56.1 states as follows:

**LEGAL STANDARD**

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a).* In evaluating a motion for summary judgment, the Court's primary function is not to "evaluate the weight of the evidence or to determine the truth of the matter," but to determine whether there is a genuine issue for trial. *U.S. Commodity Futures Trading Comm'n v. New World Holdings, LLC No. 10C 4557, 2012 U.S. Dist. LEXIS 38744, 2012 WL 983790, at *2 (N.D. Ill. Mar. 21, 2012).* "A factual dispute is 'genuine' only if a reasonable jury could find for either party." *Nichols v. Mich. City Plant Planning Dep't,* 755 F.3d 594, 599 (7th Cir. 2014). The Court, however, is not required to draw every conceivable inference from the record. Inferences that are supported only by speculation or conjecture will not defeat summary judgment. *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). The party moving for summary judgment bears the initial burden of production to show that no genuine issue of material fact exists. *Outlaw v. Newkirk,* 259 F.3d 833, 837 (7th Cir.

2001). This burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the non-moving party's case." *Id.* Upon such a showing, the nonmoving party must 'set forth specific facts showing that there is a genuine issue for trial." *Fed. R. Civ. P. 56 (e).* These facts must demonstrate that the genuine issue is material and not simply a factual disagreement between the parties. *Id.* The "nonmovant fails to demonstrate a genuine issue for trial 'where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.*

## ARGUMENT

### I. Defendant Holmes Lacks the Necessary Involvement and Knowledge for §1983 Liability.

To succeed on claim under §1983, Plaintiff must establish that Mr. Holmes was personally responsible for a deprivation of his rights. *Wilson v. Warren Cty., Illinois,* 830 F.3d 464, 469 (7th Cir. 2016). Section 1983 creates a cause of action based on personal liability and predicated on fault; thus, "to be liable under §1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005). For supervisors, this means that they "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. *Wilder v. Wexford Health Sources, Inc.*, 11 C 4109, 2015 U.S. Dist. LEXIS 60407 *37 (N.D. Ill. May 8, 2015). Supervisors must in other words act either knowingly or with deliberate, reckless indifference. *Id.; see also Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001).

#### A. Defendant Holmes cannot be held liable for failing to act as an ombudsman.

Public officials or supervisors "do not have a free-floating obligation to put things to rights, disregarding rules (such as time limits) along the way. *Burks v. Raemisch*, 555 F.3d 592, 595, (7th Cir. 2009); *Wilder at *37.* Bureaucracies divide tasks; no prisoner is entitled to insist that one

employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under §1983 for not being ombudsmen." *Burks v. Raemisch,* 555 F.3d 592, 595 (7th Cir. 2009).

As this Court is aware, the Honorable John Robert Blakey, in *Wilder,* on Defendants' Halloran and Karraker motion for summary judgment, held that the Court would not hold Halloran and Karraker liable for failing to act as ombudsmen. *Wilder v. Wexford Health Sources, Inc.*, 11 C 4109, 2015 U.S. Dist. LEXIS 60407 *39 (N.D. Ill. May 8, 2015).

Plaintiff Wilder alleged that on February 19, 2009 that he had sent a letter to Alan Karraker, the regional administrator for Wexford, asking that Wexford authorize surgery. *Wilder,* at *11. Karraker did not respond and presently did not recall receiving the letter. *Id.* Plaintiff wrote similar letters on June 25, 2009 and July 7, 2009 to both Karraker and Kevin Halloran (CEO of Wexford). *Id.* Neither took any action in response and neither remembers receiving the letter. *Id.* Karraker and Halloran had no medical training and were not responsible for medical oversight at Wexford. *Id.* Karraker was in charge of human resources, the State of Illinois contract, and personal union issues. *Id.* Halloran was the Chairman of Wexford. *Id.* Inmate letters sent to Wexford's corporate office are routed to Joseph Ebbitt, the Director of Risk Management and Legal Affairs, regardless of who the letter was intended for. *Id.*

Here, Mr. Holmes is entitled to judgment because he did not know about, approve, condone or turn a blind eye towards any of the alleged misconduct and cannot be held liable for failing to act as an ombudsman. The analysis in *Wilder* is directly on point in this case. In *Wilder,* there was no evidence showing that either administrator knew about Plaintiff's complaint. *Id. at *38.* Karraker did not recall receiving any letters from Plaintiff, and Joe Ebbitt – the Wexford Director

of Risk Management and Legal Affairs – stated that any letter from Plaintiff would have been delivered to him, not Halloran or Karraker. *Id.*

Next, the Court in *Wilder* held that there was no evidence that either Halloran or Karraker approved or condoned the misconduct alleged by Plaintiff. *Id. at *38-39.* In fact, neither administrator had the power to do so. *Id. at 39.* Halloran did not "have responsibility for making or implementing medical policies or procedures," and Karraker's job responsibilities did not "include medical treatment of inmates or the oversight of medical treatment provided by medical/clinical staff." *Id.*

Lastly, the Court held that the administrators did not turn a blind eye to Plaintiff's complaints. *Id.* There was a system in place within Wexford to ensure that inmate letters sent to administrators were directed to the Wexford Director of Risk Management and Legal compliance, so that they could be dealt with appropriately. *Id.* Finding *Burks v. Raemisch*, 555 F.3d 592 (7th Cir. 2009) persuasive, the *Wilder* Court explained that as in *Burks*, the administrators cannot be held liable simply because Plaintiff sent them a letter. *Id.* There was a system set up within Wexford to receive inmate letters and delegate responsibility for them to Joe Ebbitt and other at Wexford Corporate. *Id.* As a result, the *Wilder* Court granted summary judgment as it would not hold Halloran and Karraker liable for failing to act as ombudsmen. *Id.*

In this case, Mr. Holmes meets all the factors of *Wilder* as to why he has no liability. Here, plaintiff alleges he sent two letters to Mr. Holmes. (DEF SOF 6). However, the first letter attached to plaintiff's complaint was never received by Wexford or Mr. Holmes. (DEF SOF #7, #58, #59). The first time he read the letter was with the lawsuit. (DEF SOF#6). It is possible Mr. Holmes did receive the letter attached to plaintiff's complaint (Ex. 3) but Mr. Holmes just didn't open it and forwarded it on to Joe Ebbitt. (DEF SOF #15). The September 3, 2015 letter was never read

by Mr. Holmes. (DEF SOF #16). He did not scan/read the letter. (DEF SOF #16). Mr. Holmes does not specifically know whether or not he forwarded the September 3, 2015 letter to Joe Ebbitt. (DEF SOF #16). In some cases, he might recognize an envelope coming from an institution where it is marked "inmate mail". Other times it may not be marked that way. (DEF SOF #8). It is Mr. Holmes practice that if he receives mail from inmates, he will forward those on to Wexford corporate office, specifically, Joe Ebbitt who is part of the risk management department in Human Resources. (DEF SOF #9). The purpose of forwarding letters to Joe Ebbitt that Mr. Holmes receives from inmates is that Joe Ebbitt handles any inmate litigation within the company. (DEF SOF #10). Mr. Holmes does not know if Joe Ebbitt responds to the letters on his behalf. (DEF SOF #10). Ebbitt deposition exhibit 6 is a letter to Mr. Holmes dated September 3, 2015. Mr. Ebbitt did receive the September 3 letter. (DEF SOF #60). Wexford produced the letter sent to Joe Ebbitt by Darius Holmes of September 3, 2015 marked as Ebbitt deposition exhibit #6. The actual letter Mr. Ebbitt received from Mr. Holmes was written on notebook paper. (DEF SOF #63). Mr. Holmes was aware of the Wexford policy/procedure for inmate mail because he was informed to send any letters directly to Joe Ebbitt. (DEF SOF #65). The Wexford policy is that if anybody at corporate receives a patient letter concerning medical care, the letter is to be directed to Joe Ebbitt in risk management department. (DEF SOF #31). Darius Holmes does not have any duties or responsibilities for responding to inmate mail he received other than providing to Joe Ebbitt pursuant to the Wexford policy. (DEF SOF #68). Mr. Holmes does not have any duties or responsibilities for risk management responding to inmate litigation. (DEF SOF #68). The Wexford policy on inmate letters exist for corporate employees or owners regardless of who at Wexford received the letters. When Mr. Holmes receives inmate letters, he does not typically open those letters because if it is from an inmate, he will forward it to Joe Ebbitt. He has nothing to do

with the operations of any of Wexford's facilities. (DEF SOF #11). Mr. Holmes' knowledge is that Wexford's policy with respect to officers or directors or owners who receive inmate mail is that any inmate mail is to be forwarded to the risk management department at Wexford. (DEF SOF #13). Mr. Holmes received a letter on or about October 15 but is not positive if it is the September 3, 2015 letter. (DEF SOF #17). Mr. Holmes knows he received a letter in or around September 2015 as he received a couple of letters in the summer that he would have sent on to Joe Ebbitt. This particular one the envelope is marked "inmate mail". So most likely he would not have opened it, but there is chance he may have. (DEF SOF #18). His same practice applied to the September 3, 2015 letter marked as Holmes' exhibit 2 to his deposition that if he had received the letter he would have forwarded on the letter to Wexford. (DEF SOF #19).

Mr. Holmes does not remember specifically any letters from Mr. Taylor. Mr. Holmes, in his answers to interrogatory #4, stated there is a possibility that he had opened a letter. He wouldn't know specifically if it was from Mr. Taylor or not. (DEF SOF #20). The letter would have been forwarded on to Joe Ebbitt by him personally delivering it if he was traveling to Pittsburgh or mailed or potentially scanned. When he means scanned, he does not mean that he read it. It would have been that he scanned it to an email. (DEF SOF #21). Mr. Holmes did not talk to anybody at Wexford after receiving an inmate letter about whether or not Wexford responded to that inmate's request in the letter. (DEF SOF #23). In working for Wexford for 22 years, Mr. Holmes has never been involved in risk management. (DEF SOF #24). Mr. Holmes forwards inmate mail to Joe Ebbitt pursuant to the Wexford policy and procedure that has been in effect prior to September of 2015. As part of the Wexford procedure, Mr. Holmes defers to Joe Ebbitt in risk management as to the handling of inmate mail. (DEF SOF #26). Mr. Holmes policy and procedure for receiving, reviewing, and responding to letters and/or other written communications from inmates such as

Mr. Taylor is that he would have provided any letters to Joe Ebbitt, Director of Risk Management. (DEF SOF #57).

Mr. Holmes does not have any medical training and has never directed a medical physician in how to treat an inmate. Mr. Holmes does not practice medicine without a license. (DEF SOF #25). Mr. Holmes has never had a conversation with any physician at Stateville Correctional Center regarding their care and treatment of an inmate. (DEF SOF #27). Joe Ebbitt at Wexford makes the determination of when to respond to an inmate letter concerning medical care. (DEF SOF#38). Mr. Holmes does not provide medical care or make medical decisions in his position at Wexford, nor is he involved in the supervision and/or delivery of medical care to inmates at any of the institutions where Wexford is the contract vendor. (DEF SOF #56). Mr. Holmes has never been licensed to practice medicine and does not have any medical training. (DEF SOF #69). Mr. Holmes does not have any role, duties, or responsibilities for any of the medical policies or procedures that are drafted, implemented and in effect at Wexford Health Sources, Inc. (DEF SOF #69). Similarly, Mr. Holmes does not have any role, duties, responsibilities for directing Wexford medical physicians in the provision of medical care to inmate patients. (DEF SOF #69). To his knowledge Mr. Holmes has never directed medical care for inmates. (DEF SOF #69). Mr. Holmes has never had any involvement in Mr. Taylor's medical care. (DEF SOF #69). Mr. Holmes has never been part of the Wexford corporate medical department since 2013. (DEF SOF #71). The only action Mr. Holmes took in response to the letter he received from Mr. Taylor was to provide it to Mr. Ebbitt. (DEF SOF #71). Mr. Holmes has never had any responsibility at Wexford Health Sources for implementing the medical policies and procedures. (Def SOC #72). Mr. Holmes has never had, at Wexford, a job responsibility for making or implementing medical care policies and procedures for inmates. (Def SOC #72). Mr. Holmes has never had as a job responsibility at

Wexford, the oversight of medical treatment provided by medical clinic staff to inmate patients. (Def SOC #72).

An actual medical doctor, Arthur Funk, M.D. of Wexford responded to Mr. Taylor's letter. On October 1, 2014, Asten Pacellio, legal assistant risk management for Wexford in Pittsburgh sent an email with attached letter from Taylor to Dr. Funk to Cynthia Garcia and carbon copied Dr. Funk. (DEF SOF #78). Email content: Please read the attached letter from Stateville patient John Taylor #R66376, review the patient's chart, and take appropriate action as is medically necessary with reference to his concerns, if not already done. Also, please advise us of the patient's status. I will send a letter to the patient acknowledging his letter and advising him to go through the appropriate channels to seek and/or grieve medical issues. Dr. Funk – This letter was addressed to you. (DEF SOF #78). Dr. Funk was carbon copied on the letter to Dr. Obaisi. (DEF SOF #78). An additional letter was attached to the email from Mr. Taylor's mother to Dr. Funk. (DEF SOF #78). The same day, on October 1, 2014, Dr. Funk responded to Mr. Pacellio and Cynthia Garcia. (DEF SOF #78). Dr. Funk responded: Asten, You can respond to both that while I was at Stateville this morning I saw Mr. Taylor being attended to by Dr. Obaisi. The decision of treatment is made by Dr. Obaisi who is managing his care. Dr. Obaisi will consider all recommendations by consultants. Mr. Taylor should ask questions and discuss his concerns with Dr. Obaisi. He may also use the grievance process if dissatisfied. (DEF SOF #78).

Wexford Health Sources, Inc. had in place a system to ensure that inmate letters sent to corporate administrators, such as Gedman, Malloy, and Holmes were directed to Mr. Ebbitt. (Def SOC #73). The Wexford policy and procedure on inmate mail has been an effective policy in that it makes certain that all inmate letters that are received at the corporate office of Wexford are directed to Joe Ebbitt which ensures consistency. (Def SOC #73). The responsibility to respond to

inmate letters was never directed to anyone else at Wexford other than Joe Ebbitt as the director of risk management and legal affairs/HIPAA compliance. (Def SOC #73).

John Taylor himself testified that he is familiar with the *Wilder* case and that Joe Ebbitt is responsible for handling inmate letters at Wexford. (DEF SOF #51). Taylor knew this policy before he filed his lawsuit. (DEF SOF #52). The system Wexford has set in place to respond to inmate letters by being directed to Joe Ebbitt in Risk Management ensures consistency. (DEF SOF #73).

**B. Imposing liability on Defendant Holmes would evade the basic tenant of §1983 claims – responsibility only for one's own actions.**

In *Burks,* plaintiff spent three stints at the Milwaukee Secure Detention Facility. *Burks,* 555 F.3d at 593. Burks eye condition was left untreated while in the detention facility. *Id.* Burks contended in his suit under 42 U.S.C. §1983 that seven persons, starting with the Secretary of the Wisconsin Department of Corrections and working down through its organization chart, were liable because they exhibited deliberate indifference to his serious medical need. *Id.* The assumption underlying this choice of defendants – that anyone that knew or should have known of his eye condition, and everyone higher up the bureaucratic chain, must be liable – is a bad one. *Id.*

The idea that everyone who knows about a prisoners problem must pay damages implies that he could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter writing campaign does not lead to better medical care. *Burks,* 555 F.3d at 595. That can't be right. *Id.* Following Plaintiff Taylor's misguided logic which the Seventh Circuit has found to be "not right", implies that he could write letters to everyone employed or affiliated with Wexford throughout the country regardless of title, role, or responsibility.

The contention that any official who knows (or should know) about a wrong must do something to fix it is just an effort to evade, by indirection, the well-established rule that public employees are responsible for their own misdeeds but not for anyone else's. *Taylor v. Gayle*, No. 11-cv-104-JPG, 2011 U.S. Dist. LEXIS 42103, at *8-9 (S.D. Ill. Apr. 18, 2011) ("Plaintiff seems to think that any [official] who knows (or should know) about his problems has a duty to fix those problems. That theory is in direct conflict with the well-established rule that public employees are responsible for their own misdeeds but not for anyone else's.")

Here, Plaintiff is attempting to impose liability on Mr. Holmes based on the same faulty reasoning at issue in *Burks* and *Taylor*[1]. Simply put, Mr. Holmes is named as a Defendant in this case because Plaintiff found his name in a confidential contract passed around between inmates who file lawsuits. (GEDMAN SOF # 73). He did not know his job responsibilities, medical training, or role regarding decision-making or approving patient care. (DEF SOF #53-55). He did know, however, he would not read any letter he sent him. (DEF SOF #52). Despite this, he sued him for deliberate indifference based on information he believes he learned through letters he knew he would not read. (DEF SOF #51-55, Dkt. 1). This is the exact letter writing campaign hypothesized in *Burks*, *citing Durmer v. O'Carroll*, 991 F.2d 64, 65 (3rd Cir. 1993)(neither of these defendants, however, is a physician, and neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor).

## II. Defendant Holmes Lacks the Necessary Subjective Intent for §1983 Liability.

To satisfy the subjective component to the deliberate indifference standard, Plaintiff must establish that the Defendant actually knew that Plaintiff needed treatment for a serious medical

[1] Plaintiff was already aware that this reasoning is faulty because he is the Plaintiff in *Taylor v. Gayle*. (Dkt. 1, p. 7).

need but nevertheless *purposely* and *deliberately* withheld it. *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994) (emphasis added). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987). Deliberate indifference "is merely a synonym for intentional or criminally reckless conduct." *Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991); *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985).

The subjective element of a deliberate indifference claim has two components: the defendant (1) must actually know about a substantial risk of harm to an inmate; and (2) disregard that risk. *Petties,* 836 F.3d at 728. This requires the defendant to act with a sufficiently "culpable state of mind, something akin to criminal recklessness." *Norfleet v. Webster,* 439 F.3d 392, 397 (7th Cir. 2006). Negligence does not satisfy this standard, nor does objective recklessness, i.e., "failing to act in the face of an unjustifiably high risk that is so obvious that it *should* be known." *Petties,* 836 F.3d at 728 (emphasis in original). It strains credulity to assert that a non-physician such as Mr. Holmes actually knew of a substantial risk of harm to Mr. Taylor and then, disregarded that risk.

Further, a non-medical official cannot be held deliberately indifferent simply because he failed to respond directly to the complaints of a prisoner. *Johnson v. Doughty*, 433 F.3d 1001, 1012 (7th Cir. 2006). The Plaintiff in *Johnson* told an assistant warden in a one-on-one conversation that he was having bowel complications and his treating physician did not recommend hernia surgery. *Id.* According to *Johnson*, the assistant warden said he would follow up on the matter and never did. *Id.* The Seventh Circuit granted the assistant warden summary judgment because, as a non-medical official, he could reasonably rely on medical staff. Further, it is uncontroverted that Ms. Holmes is non-medical official. (DEF SOF #56, #69).

Plaintiffs own surgical expert Dr. Gutowski articulated at his deposition the fallacy of Plaintiff's argument that a business-person with zero medical training is going to order a surgeon how to do their profession. Gutowski agreed that Wexford and Dr. Obaisi cannot force any surgeon to operate on a patient for a condition the surgeons clearly state they're not comfortable. (DEF SOF 74). Ancillary personnel at a hospital cannot order him to do surgery. (DEF SOF 74). If an administrative assistant called Dr. Gutowski and said "My aunt Betty was in to see you and you told her there's no viable surgical option," Dr. Gutowski testified that she could not force him to do a surgery if you didn't think there was a viable option. (DEF SOF 74). Every physician, especially every surgeon has the responsibility for their own patients to determine whether they can offer help to them. (DEF SOF 75). People cannot practice medicine and make medical judgments without having a medical license. (DEF SOF 75). Surgeons are the one who would make the determination there was a viable surgical option. If you are going to write a letter to someone requesting surgery, it would be wise to direct the letter to the person that could actually do the surgery, a surgeon. (DEF SOF 76). Indeed, Taylor did send letters to surgeon Dr. Dumanian. (DEF SOF 77). Dr. Dumanian testified that many of Mr. Taylor's letters he never even opened as they were placed in the chart by his nurse and never looked at them. (DEF SOF 77). Taylor has written to many physicians at Wexford and wrote directly to surgeon Dr. Dumanian. Why write to a business corporate person concerning a complex medical need when you have the identity of medical personnel that can help you? There is no reason.

Here, even assuming *arguendo*, Mr. Holmes read the two letters sent by Plaintiff (which he did not), it is insufficient to establish deliberate indifference. Like in *Johnson*, a non-medical official relying on the knowledge that an inmate is under the care of a doctor when not responding to a complaint amounts to, at the very worst, negligence. It is simply does not meet the high

threshold of deliberate indifference which requires an action that is not negligence, not even gross negligence, but something willful, wanton, and "repugnant to the conscience of mankind." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976).

**III. Defendant Holmes is still not liable as there was no underlying unconstitutional violation.**

Finally, Mr. Holmes cannot be liable as Plaintiff's constitutional right to be free from cruel and unusual punishment was not violated in this case. A defendant in a supervisory capacity cannot be liable when the conduct of the underlying physician was not unconstitutional. *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). *See Defendant Saleh Obaisi's Motion for Summary Judgment filed in the instant case, No. 16-cv-3464, NDIL.*

## CONCLUSION

There remains no genuine issue of fact that plaintiff has failed to put forth any admissible evidence to meet the extremely high threshold of deliberate indifference as Darius Holmes had no personal involvement, knowledge, or intent to incur liability.

WHEREFORE, Defendant, DARIUS HOLMES by and through his attorneys, BOLLINGER CONNOLLY KRAUSE, LLC, respectfully request that this Honorable Court grant his Rule 56 Memorandum of Law in Support of Summary Judgment for the above stated reasons and award Defendant costs and dismiss DARIUS HOLMES with prejudice from Plaintiff's Second Amended Complaint, (Dkt. 32).

Respectfully Submitted,

DARIUS HOLMES

By:___/s/ Robert S. Tengesdal____________
One of the Attorneys for Defendants

Robert S. Tengesdal (#6288650)
CONNOLLY KRAUSE LLC
500 West Madison Street, Suite #3900
Chicago, IL 60661
Ph: (312) 253-6200
Fax: (312) 253-6201
rtengesdal@cktrials.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2021, I caused the foregoing document to be filed electronically with the Clerk of the Court through ECF. All of the participants in the case will be served by the CM/ECF system.

By: /s/ Robert S. Tengesdal